**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY
378 N. Main Avenue
Tucson, AZ 85701

*Plaintiff*,

v.

U.S. FISH AND WILDLIFE SERVICE
1849 C Street, NW
Washington, D.C. 20240,

*and*

U.S. DEPARTMENT OF THE INTERIOR
1849 C Street, NW
Washington, D.C. 20240,

*Defendants.*

Case No. 1:26-cv-3597

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. In this action, the Center for Biological Diversity (Center) challenges the failure of Defendants, the U.S. Fish and Wildlife Service (FWS) and the U.S. Department of the Interior (DOI), to provide records concerning Defendants' implementation of the Endangered Species Act (ESA). Specifically, the Center challenges Defendants' failure to respond to a request for records about their treatment of Incidental Take Statements and Incidental Take Permits in light of FWS's recent rescission of its regulatory definition of "harm," 50 C.F.R. § 17.3—a definition that has been part of the agency's regulations implementing the ESA for more than 50 years. The Center further challenges FWS's failure to affirmatively disclose an FWS memorandum under

the Freedom of Information Act's (FOIA) reading room provision, 5 U.S.C. § 552(a)(2)(B). Both failures constitute violations of FOIA, 5 U.S.C. § 552.

2. Congress enacted the ESA in 1973 "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). This is achieved, in part, by Section 9 of the ESA, which prohibits actions that purposefully *or incidentally* "take" endangered species. *Id.* § 1538(a)(1). The ESA defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id.* § 1532(19).

3. The ESA specifically contemplates the possibility of a take of an endangered species that is "incidental" to a permitted activity. *See id.* § 1536(b)(4). Actions of a federal agency that could lead to an incidental take are subject to Section 7 of the ESA and trigger the issuance of an Incidental Take Statement that "specifies the impact of such incidental taking on the species" and "specifies those reasonable and prudent measures that the Secretary considers necessary or appropriate to minimize such impact." *Id.* The ESA also provides more generally for the issuance of Incidental Take Permits "if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." *Id.* § 1539(a)(1)(B).

4. As the Supreme Court explained in 1995, "the fact that Congress . . . authorized the Secretary to issue permits for takings that [the ESA] would otherwise prohibit, 'if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity,' strongly suggests that Congress understood [the ESA] to prohibit indirect as well as deliberate takings." *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or*., 515 U.S. 687, 700 (1995) (citations omitted). "No one could seriously request an 'incidental' take permit to avert [ESA] liability for

direct, deliberate action against a member of an endangered or threatened species.'" *Id.* at 700–01.

5. Thus, for decades, FWS and DOI have understood that a "take" under the ESA encompasses both deliberate takings and indirect, incidental takings, such as significant habitat modification or degradation. Accordingly, regulations promulgated by FWS in 1975, which were later clarified in 1981, defined "harm" as "an act which actually kills or injures wildlife." 50 C.F.R. § 17.3 (1981). "Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." *Id*.

6. In July 2026, FWS and the National Marine Fisheries Service disrupted this decades-long understanding when they each repealed their respective regulatory definitions of "harm," with an effective date of September 14, 2026. *See* 91 Fed. Reg. 43,300, 43,317 (July 14, 2026). Both agencies claimed that these longstanding regulatory definitions did not represent the "best reading" of the statute. *Id*. at 43,303.

7. In response to this drastic change, on August 27, 2026, the Center submitted two requests for records pursuant to FOIA—one to FWS and one to DOI's Office of the Secretary—seeking records "mentioning, including, discussing, and/or referencing the issuance of Biological Opinion Incidental Take Statements, or processing of under the Endangered Species Act ('ESA') Section 10 Incidental Take Permit applications in light of the rescission of the regulatory definition of 'harm.'"

8. On September 16, 2026, the *New York Times* released a story about a leaked internal memorandum (hereinafter the "Take Memorandum") presenting guidance to FWS staff,

directing them to no longer consider incidental killings or injuries of animals to be illegal "takes" under the ESA. The Take Memorandum is dated September 14, 2026.

9. The Take Memorandum allegedly states: "[a] vessel that inadvertently strikes a whale has not taken it, because the vessel's course was not set against the whale" and "[f]elling a tree is not a take of the bats roosting in it unless the tree is felled for the purpose of killing or capturing them."

10. On September 17, 2026, the Center sent a letter to Brian Nesvik, Director of FWS, requesting immediate release of the Take Memorandum in accordance with FOIA's "reading room" provision. *See* 5 U.S.C. § 552(a)(2)(B). This provision requires the affirmative public disclosure, among other materials, of "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." *Id*. FWS's Take Memorandum directing FWS staff to follow a new, highly restrictive definition of "take" in the ESA falls squarely in that category.

11. As of the date of this filing, the Center has not received a response to its letter, and FWS has not otherwise made the Take Memorandum available in accordance with FOIA's reading room provisions. The National Marine Fisheries Service, in contrast, has released its version of the Take Memorandum to the Center.

12. On September 22, 2026, FWS responded to the Center's FOIA request indicating that it expects to produce responsive records by May 7, 2027. On August 31, 2026, DOI stated that it was invoking a 10 workday extension of its deadline to respond to the Center's FOIA request. As of the date of this filing, the Center has not received any responsive records from FWS or DOI.

13. FWS and DOI's unlawful refusal to comply with FOIA's statutorily mandated deadlines for a determination on the Center's FOIA requests, failure to conduct an adequate search for responsive records, failure to promptly release responsive records, improper withholding of responsive records, and improper withholding of the Take Memorandum undermines FOIA's policy of government transparency.

14. Prompt public access to these records is necessary to effectuate FOIA's statutory purpose. Accordingly, the Center seeks (1) declaratory relief establishing that FWS and DOI have violated FOIA and (2) injunctive relief directing Defendants to (a) provide the Center with all responsive records without further delay, and (b) affirmatively publicly disclose the Take Memorandum.

## JURISDICTION AND VENUE

15. The Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA and the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202.

16. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

17. Declaratory relief is appropriate under 28 U.S.C. § 2201(a).

18. Injunctive relief is appropriate under 5 U.S.C. § 522(a)(4)(B) and 28 U.S.C. § 2202.

## PARTIES

19. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization with offices throughout the United States and that is headquartered in Tucson, Arizona. The Center has more than 101,000 members. The Center works through

science, law, and policy to maintain and increase protections for air and water; plants, animals, and their native habitats; a livable climate; public lands; and healthy communities. The Center's Endangered Species Program, which submitted the FOIA request at issue, specifically focuses on protecting and recovering all endangered and threatened species and their habitats.

20. FOIA requires the Defendants to search for and promptly produce the requested records to the Center. Defendants' failure to do so harms the Center because it deprives the Center from timely obtaining information about Defendants' treatment of incidental takes under Defendants' new and unprecedented recission of the regulatory definition of harm. Understanding how Defendants plan to act on incidental takes within this new landscape is crucial for the Center's understanding of the incidental take process—a provision that has protected and conserved endangered and threatened species for five decades.

21. Defendants' failure to comply with FOIA—both by failing to provide requested records and by withholding the Take Memorandum from the reading room—deprives the Center of information that is statutorily mandated to be available under FOIA. Absent this information, the Center cannot provide full, accurate, and current information to its members and the public, which undercuts the Center's advocacy for listed species. Consequently, the Center is suffering informational injury from Defendants' unlawful actions.

22. Defendants' failure to comply with FOIA harms the Center's ability to provide full, accurate, and current information to its members and the public on a matter of public interest. Absent this information, the Center's mission to protect endangered and threatened species and their habitats is adversely affected.

23. The relief the Center seeks will remedy the harm Defendants caused and continue to cause to the Center.

24. Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA, primarily for terrestrial and freshwater organisms. The Secretary of the Interior has delegated administration of the ESA to FWS. 50 C.F.R. § 402.01(b).

25. Defendant U.S. DEPARTMENT OF THE INTERIOR is a cabinet-level agency within the executive branch of the U.S. government tasked with managing federal lands, natural resources, National Parks, wildlife refuges, public lands, and endangered species. DOI is the federal agency that possesses and controls the records the Center seeks and thus is subject to FOIA. *See* 5 U.S.C. § 552(f). As such, DOI is responsible for fulfilling the Center's FOIA requests.

## STATUTORY BACKGROUND

26. FOIA's primary purpose is to improve government transparency and accountability by requiring the disclosure of agency records and information. It establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or more narrow statutory exemptions apply, *id*. § 552(b).

27. Recognizing that the timely disclosure of requested records is essential to fulfilling its purpose, Congress imposes strict deadlines for agencies to respond to FOIA requests.

28. Within twenty working days of receiving a request, an agency must (1) determine if it will release requested records and (2) notify the requester of (a) its determination and the reasons therefore, (b) the right to seek assistance from the FOIA Public Liaison, and (c) the right to appeal an adverse agency determination. *Id*. § 552(a)(6)(A).

29. To make a lawful "determination," "the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Resp. & Ethics in Wash. v. FCC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

30. In "unusual circumstances," an agency may extend the time to make a determination by no more than ten additional working days, but it must provide written notice to the requester setting forth the unusual circumstances for the extension and "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i).

31. "Unusual circumstances" are limited to (1) "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;" (2) "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records . . .;" or (3) "the need for consultation . . . with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein." *Id.* § 552(a)(6)(B)(iii).

32. If the agency fails to comply with the applicable time limit, "[a]ny person making a request . . . for records . . . shall be deemed to have exhausted . . . administrative remedies" for that request. *Id.* § 552(a)(6)(C)(i).

33. If the agency provides written notice that the request cannot be processed within the specified time limit, the agency "shall provide . . . an opportunity to limit the scope of the request so that it may be processed within [the statutory] time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." *Id.*

§ 552(a)(6)(B)(ii). The agency must also "make available its FOIA Public Liaison" to "assist in the resolution of any disputes between the requester and the agency." *Id.*

34. FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *See* 5 U.S.C. § 552(a)(3)(C)–(D).

35. FOIA requires federal agencies to promptly disclose requested records. 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i).

36. In certain limited instances, records may be withheld pursuant to nine specific exemptions. *Id.* § 552(b). These exemptions must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy. An agency bears the burden of proof if it claims any exemption applies to withhold responsive documents. *Id.* § 552(a)(4)(B).

37. Even where records may be exempt from disclosure, FOIA requires agencies to disclose reasonably segregable portions of those records. *Id.* § 552(b); *see id.* § 552(d).

38. FOIA's reading-room provision mandates that certain enumerated categories of records are made "available for public inspection in an electronic format." *Id.* § 552(a)(2). These categories include "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." *Id.* § 552(a)(2)(B).

39. The United States Supreme Court has explained that this provision of FOIA, "expressly requiring indexing of . . . statements of policy and interpretations which have been adopted by the agency, . . . represents a strong congressional aversion to secret agency law and represents an affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (citation modified).

40. Consequently, FOIA mandates the public release of records "if the agency has 'adopted' the opinion [contained therein] as its own." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 922 F.3d 480, 486 (2019) (citation omitted); *see also NLRB v. Sears*¸ 421 U.S. at 161 (discussing "the public interest in knowing the reasons for a policy actually adopted by an agency").

41. FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

**FACTUAL BACKGROUND**

42. On August 27, 2026, the Center submitted two FOIA requests—one to FWS and one to DOI's Office of the Secretary— for records from April 17, 2025, to the date the relevant searches were conducted, seeking "guidance, instructions, memoranda, and/or records containing direction to [FWS] and/or the National Marine Fisheries Service ('NMFS') staff mentioning, including, discussing, and/or referencing the issuance of Biological Opinion Incidental Take Statements, or processing of under the [ESA] Section 10 Incidental Take Permit applications in light of the rescission of the regulatory definition of 'harm.'" To aid the agencies in their responses, both FOIA requests suggested search terms of "Section 9 +incidental take + habitat" and "Section 9 +incidental take + harm." Both FOIA requests also stated that the "requests exclude emails and communications."

43. That same day, August 27, 2026, FWS and DOI's Office of the Secretary each sent the Center an automated email indicating that they had received the Center's requests. FWS assigned the Center's request tracking number DOI-2026-009281 and DOI's Office of the Secretary assigned the Center's request tracking number DOI-2026-009282. On August 31,

2026, DOI's Office of the Secretary stated that it was invoking a 10-day extension of its deadline to respond to the Center's FOIA request. *See* 5 U.S.C. § 552(a)(6)(B). The stated reason for invoking the extension was the "need to search for and collect requested records from field facilities or other units that are separate from the office processing the request."

44. On September 16, 2026, the *New York Times* published an article about the Take Memorandum. According to the article, the Take Memorandum is dated September 14, 2026—the same day the repeal of the "harm" definition became effective—and directs FWS staff to no longer treat the killing or injury of endangered species as an illegal "take" under the ESA unless causing that death or injury is the specific purpose an action.

45. As examples, the Memorandum states that the unintentional or incidental killing of an endangered whale by a ship strike would no longer be considered illegal, nor would the cutting down of a tree in which bats are roosting, even if the death of the whale or bats was easily foreseeable.

46. This unprecedented interpretation would disrupt, among other things, the FWS's longstanding procedures that require obtaining an incidental take permit before engaging in any activity that might result in the accidental injury or death of an endangered species. The issuance of such permits is a common aspect of industrial activities that result in accidental harm both directly to species and to their habitats.

47. On September 17, 2026, the Center sent a letter to Brian Nesvik, Director of FWS, as well as the FWS's FOIA and Public Affairs Offices, requesting immediate release of the Take Memorandum to the FOIA reading room, in accordance with 5 U.S.C. § 552. Given the importance of the issue to the Center's work, the letter requested a response by the close of business on September 18, 2026.

48. On September 18, 2026, the Center sent a similar letter to the National Marine Fisheries Service, based on the Center's belief that the Fisheries Service likely had a similar memorandum. On September 24, 2026, the Fisheries Service released its version of the Take Memorandum to the Center.

49. On September 22, 2026, FWS responded to the Center's FOIA request indicating that it expects to produce responsive records by no earlier than May 7, 2027.

50. On October 5, 2026, FWS responded to an email from the Center requesting an update on its FOIA request. FWS stated that the Center's request was not assigned for processing until October 2, 2026, and is currently 92nd in its processing queue. FWS confirmed that the Center's request will not be processed until it "reaches the appropriate position in the queue."

51. As of the date of this filing, the Center has not received any responsive records from FWS or DOI.

52. As of the date of this filing, more than thirty (30) working days have passed since the Center sent its records request to FWS. This is past FOIA's deadline for receiving responsive records. 5 U.S.C. § 552(a)(6)(A).

53. As of the date of this filing, more than thirty (30) working days have passed since the Center sent its records request to DOI. This is past FOIA's deadline for receiving responsive records. 5 U.S.C. § 552(a)(6)(A).

54. As of the date of this filing, the Center has received no further communications from FWS, DOI's Office of the Secretary, nor any other DOI component.

55. As of the date of this filing, neither FWS, DOI's Office of the Secretary, nor any other DOI component has provided a lawful determination to the Center describing the scope of the records it intends to produce or withhold, explained the reasons for withholding any records,

or informed the Center that it may appeal any specific adverse determination within the relevant time periods outlined in 5 U.S.C. § 552(a)(6)(A)–(B).

56. As of the date of this filing, neither FWS, DOI's Office of the Secretary, nor any other DOI component has disclosed any records to the Center pursuant to its August 27, 2026, requests, tracking numbers DOI-2026-009281 and DOI-2026-009282.

57. As of the date of this filing, neither FWS, DOI's Office of the Secretary, nor any other DOI component has requested additional information from the Center or notified the Center of any lawful circumstances that prevent FWS or DOI from complying with FOIA's deadline for a determination and prompt release of responsive records. *Id.* § 552(a)(6)(A)–(B).

58. As of the date of this filing, the Center has not received a response to its letter dated September 17, 2026, and FWS has not otherwise made the Take Memorandum available in accordance with FOIA's reading room provisions.

59. As of the date of this filing, and to the best of the Center's knowledge, FWS has not publicly acknowledged the Take Memorandum or made the document publicly available.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### FWS: Failure to Comply with FOIA's Mandatory Determination Deadline, Failure to Conduct an Adequate Search, Failure to Promptly Disclose All Responsive Records, and Unlawful Withholding of Responsive Records

60. Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

61. The Center properly requested records within the control of FWS through the Center's August 27, 2026, request, tracking number DOI-2026-009281.

62. The Center has a statutory right to a lawful final determination from FWS on the Center's August 27, 2026, FOIA request. 5 U.S.C. § 552(a)(6)(A)(i).

63. The deadline for FWS to provide a determination on the Center's FOIA request was September 25, 2026.

64. FWS has not communicated with the Center about the scope of records it intends to produce and/or withhold, has given no reason to withhold any records, and has not disclosed any records in response to the Center's August 27, 2026, FOIA request.

65. FWS's failure to provide a lawful determination by FOIA's mandatory deadline violates the Center's right to a determination. 5 U.S.C. § 552(a)(6)(A)(i).

66. FWS has no lawful basis for its delay and has provided no lawful basis to withhold a determination on the Center's FOIA requests.

67. FWS has also violated the Center's statutory right by unlawfully failing to conduct adequate searches reasonably calculated to locate all records responsive to the Center's August 27, 2026, FOIA request. 5 U.S.C. § 552(a)(6)(A)(i).

68. FWS has also violated the Center's statutory right to the prompt disclosure of the requested records, and there is no lawful basis for FWS's withholding of this information. 5 U.S.C. § 552(a)(3)(A). FWS has violated the Center's statutory rights by illegally withholding records that are responsive to the Center's August 27, 2026, FOIA request and by failing to demonstrate that any such records are subject to any FOIA withholding provision or exemption. 5 U.S.C. § 552(b).

69. FWS's failure to make a determination on the Center's August 27, 2026, FOIA request, failure to conduct adequate searches in response to that request, and failure to promptly

disclose the requested information and records responsive to the Center's FOIA request violates FOIA. 5 U.S.C. § 552(a)(3), (a)(6).

70. The Center is deemed to have exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

71. The Center's organizational activities are being and will continue to be adversely affected if FWS is allowed to continue violating FOIA's requirements to provide a determination, conduct an adequate search, and promptly disclose all responsive records.

72. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to FWS in the foreseeable future.

73. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, FWS will continue to violate the Center's FOIA rights.

**SECOND CLAIM FOR RELIEF**

**FWS: Failure to Comply with FOIA's Mandatory Reading Room Provision**

74. Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

75. The Center has a statutory right for "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register" to be made "available for public inspection in an electronic format." 5 U.S.C. § 552(a)(2).

76. Such "statements of policy and interpretations" "must be indexed and made available to a member of the public on demand." *NLRB v. Sears*, 421 U.S. at 136–37.

77. FWS has made no response to the Center's September 17, 2026, letter to Brian Nesvik, Director of FWS, requesting immediate release of the Take Memorandum to the FOIA

reading room. FWS has not disclosed the Take Memorandum in accordance with FOIA's reading room provision. 5 U.S.C. § 552(a)(2).

78. FWS has provided no lawful basis to withhold the Take Memorandum pursuant to any of FOIA's nine exemptions to mandatory disclosure or to withhold any segregable, nonexempt portion of the memorandum. *Id.* § 552(a)(8)(A), (b).

79. FWS has no lawful basis for its delay or to withhold the Take Memorandum from the public reading room.

80. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, FWS will continue to violate the Center's right to publicly access the Take Memorandum.

## THIRD CLAIM FOR RELIEF

### DOI: Failure to Comply with FOIA's Mandatory Determination Deadline, Failure to Conduct an Adequate Search, Failure to Promptly Disclose All Responsive Records, and Unlawful Withholding of Responsive Records

81. Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

82. The Center properly requested records within the control of DOI's Office of the Secretary through the Center's August 27, 2026, request, tracking number DOI-2026-009282.

83. The Center has a statutory right to a lawful final determination from DOI on the Center's August 27, 2026, FOIA request. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

84. The deadline for DOI to provide a determination on the Center's FOIA request in light of its invocation of a ten-day extension was October 9, 2026.

85. DOI has not communicated with the Center about the scope of records it intends to produce and/or withhold, has given no reason to withhold any records, and has not disclosed any records in response to the Center's August 27, 2026, FOIA request.

86. DOI's failure to provide a lawful determination by FOIA's mandatory deadline violates the Center's right to a determination. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

87. DOI has no lawful basis for its delay and has provided no lawful basis to withhold a determination on the Center's FOIA request.

88. DOI has also violated the Center's statutory right by unlawfully failing to conduct adequate searches reasonably calculated to locate all records responsive to the Center's August 27, 2026, FOIA request. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

89. DOI has also violated the Center's statutory right to the prompt disclosure of the requested records, and there is no lawful basis for DOI's withholding of this information. 5 U.S.C. § 552(a)(3)(A). DOI has violated the Center's statutory rights by illegally withholding records that are responsive to the Center's August 27, 2026, FOIA request and by failing to demonstrate that any such records are subject to any FOIA withholding provision or exemption. 5 U.S.C. § 552(b).

90. DOI's failure to make determinations on the Center's August 27, 2026, FOIA request, failure to conduct adequate searches in response to that request, and failure to promptly disclose the requested information and records responsive to the Center's FOIA request violates FOIA. 5 U.S.C. § 552(a)(3), (a)(6).

91. The Center is deemed to have exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

92. The Center's organizational activities are being and will continue to be adversely affected if DOI is allowed to continue violating FOIA's requirements to provide a determination, conduct an adequate search, and promptly disclose all responsive records.

93. Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to DOI in the foreseeable future.

94. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, DOI will continue to violate the Center's FOIA rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Declare that Defendants violated FOIA by failing to conduct an adequate search for records responsive to the Center's August 27, 2026, FOIA requests, failing to provide a lawful determination on those requests, and failing to promptly disclose all responsive records;

(B) Declare that Defendant FWS violated FOIA by failing to publicly release the Take Memorandum;

(C) Order Defendants to provide a determination on Plaintiff's August 27, 2026, FOIA requests, tracking numbers DOI-2026-009281 and DOI-2026-009282;

(D) Order Defendants to conduct a search reasonably calculated to locate all records responsive to Plaintiff's FOIA request;

(E) Order Defendants to produce, by a date certain, all nonexempt responsive records, any segregable portions of otherwise exempt records, and a *Vaughn* index of any records or portions of records withheld under any FOIA exemption;

(F) Order Defendant FWS to release the Take Memorandum pursuant to FWS's reading room provision;

(G) Enjoin Defendants from continuing to withhold the Take Memorandum, any nonexempt responsive records and any segregable portions of responsive records;

(H) Retain jurisdiction of this action to ensure that Defendants timely process Plaintiff's FOIA requests, that no agency records or portions of records are improperly withheld, and that the Take Memorandum is released timely;

(I) Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

(J) Grant such other and further relief as the Court may deem just and proper.

DATED: October 15, 2026

Respectfully submitted,

*s/ Kristen Monsell*
Kristen Monsell (D.C. Bar No. CA00060)
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7137
Fax: (510) 844-7150
kmonsell@biologicaldiversity.org

*s/ Rebecca Garverman*
Rebecca Garverman (MA Bar No. 709190)*
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (617) 544-0176
rgarverman@biologicaldiversity.org
**Pro Hac Vice* Application Pending

*Attorneys for Plaintiff*